**G. ERIC NIELSON (5327)**
**MARIANNE P. CARD (14953)**
***G. ERIC NIELSON & ASSOCIATES***
4790 South Holladay Boulevard
Salt Lake City, Utah 84117
Telephone: (801) 424-9088
Facsimile: (801) 438-0199
Email: ericnielson@ericnielson.com
           mariannecard@ericnielson.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| SARAH KABIR, BY HER GUARDIAN, RANJNA MAHAY;<br><br>       Plaintiff,<br><br>vs.<br><br>DAVIS HOSPITAL AND MEDICAL CENTER, L.P.; EMERGENCY PHYSICIANS INTEGRATED CARE, LLC; DIRECT RADIOLOGY, PLLC; ALLEN A. NAWROCKI, M.D.; TYLER J. WILLIAMS, M.D., CHRISTOPHER K. ANDERSON, M.D., and DOES I-X,<br><br>       Defendants. | **COMPLAINT**<br><br>Case No.: 2:23-cv-00083<br>Judge: |

Plaintiff, SARAH KABIR, BY HER GUARDIAN, RANJNA MAHAY, by and through counsel, G. Eric Nielson and Todd Wahlquist of *G. ERIC NIELSON & ASSOCIATES,* hereby complains against the above-captioned Defendants, alleging as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, SARAH KABIR, (Ms. Kabir) is an individual who is a resident of the State of California. Ranjna Mahay, as guardian of Sarah Kabir, is, and at all relevant times has been, a resident of the State of California.

2. Defendant, TYLER J. WILLIAMS, M.D. (Dr. Williams), is an individual who has residency in the State of Utah, who at all relevant times was providing health care services in Davis County, Utah.

3. Defendant, CHRISTOPHER K. ANDERSON, M.D. (Dr. Anderson) is an individual who has residency in the State of Utah, who at all relevant times was providing health care services in Davis County, Utah.

4. Defendant, ALLEN A. NAWROCKI, M.D. (Dr. Nawrocki) is an individual who currently has residency in the State of Texas, who at all relevant times was providing health care services in Davis County, Utah.

5. Defendant, EMERGENCY PHYSICIANS INTEGRATED CARE, LLC ("EPIC") is a corporation with its residency in Salt Lake County, State of Utah, who at all relevant times was providing health care services in Davis County, Utah.

6. Defendant, DIRECT RADIOLOGY, PLLC ("DIRECT RADIOLOGY"), is a corporation with its residency in Snohomish County, State of Washington, who at all relevant times was providing health care services in Davis County, Utah.

7. Defendant, DAVIS HOSPITAL AND MEDICAL CENTER ("DAVIS HOSPITAL") is a corporation with its residency in Dallas County, State of Texas, who at all relevant times was providing health care services in Davis County, Utah.

8. Upon information and belief, Dr. Williams was an employee/partner of Emergency Physicians Integrated Care, LLC ("EPIC").

9. Upon information and belief, Dr. Anderson was an employee of Davis Hospital and Medical Center, L.P. ("Davis Hospital").

10. Upon information and belief, Dr. Nawrocki was or is an employee of Direct Radiology, PLLC ("Direct Radiology").

11. Defendant DOES I-X are entities or individuals which are liable for the injuries and damages alleged herein. Plaintiffs are unaware of the true names and capacities of Defendants sued herein as DOES I through X, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.

12. At all relevant times, Defendant DOES have been residents of, or corporations registered to do business in, the State of Utah, and have rendered professional services as health care providers in the State of Utah.

13. Each of the fictitiously named Defendants is liable in some manner, either by wrongful act, omission, and negligence or otherwise, for the occurrences alleged and the injuries alleged, in part or in whole, were legally caused by the conduct of the fictitiously named Defendants.

14. Upon information and belief, at all material times, each of the Defendants were an agent, ostensible agent, servant, employer, employee, joint venturer, partner and/or alter ego of one or more of each of the remaining Defendants, and were at all times acting within the purpose and scope of such agency, servitude, joint venture, alter ego, partnership or employment, and with the authority, consent, approval and/or ratification of each remaining Defendant.

15. This Court has original jurisdiction over the claims presented in this case under 28 U.S.C. § 1332 which provides for diversity jurisdiction over civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between

citizens of different States.

16. Venue is appropriate under 28 U.S.C. § 1391.

17. In bringing this action, Plaintiff has complied with all statutory requirements regarding pre-litigation review of this matter set forth in the Utah Health Care Malpractice Act.

18. Utah Code Ann. § 78B-3-409 prohibits ad damnum clauses in complaints for medical malpractice, but such damages are hereby affirmatively alleged to be in excess of $300,000.00.

## GENERAL STATEMENT OF NATURE OF CLAIM

1. Sarah Kabir was taken by ambulance to the emergency department at Davis Hospital on February 14, 2021, after losing consciousness.

2. The ambulance arrived on the scene at approximately 02:50 a.m. and Sarah arrived at the emergency department at approximately 02:56 a.m.

3. In the emergency room, Sarah was treated by Dr. Tyler J. Williams.

4. Sarah had been given Narcan in the ambulance.

5. After receiving Narcan, Sarah's movements remained non-purposeful.

6. Sarah was given a Glasgow Coma Score of 6.

7. In the emergency room, Sarah was given another dose of Narcan without a significant increase in her mental status.

8. At 03:05 a.m., Sarah's blood alcohol level was measured at .1775.

9. A STAT head/brain CT was ordered at 03:11 a.m.

10. A head CT was performed at 04:02 a.m.

11. At 04:48 a.m. the head CT was read as normal.

12. The head CT was read by Dr. Allen A. Nawrocki.

13. At 04:52 a.m., a urine screen was negative for opiates, methadone, barbiturates, amphetamines, benzodiazepines, cocaine, cannabinoids, and other drugs.

14. At approximately 05:30 a.m., due to a concern that Sarah could not protect her airway, she was intubated and sedated.

15. At 06:41 a.m., Sarah was admitted to the ICU under the care of Dr. Christopher K. Anderson.

16. Dr. Anderson noted that, "Sarah has overdosed on a medication we do not have chemical evidence for. This could be her anti-depressant, synthetic agents, spice, rock salts, a whole wide variety of possibilities."

17. Dr. Anderson noted that "our approach will be supportive care…" Sarah was medically sedated until the following day, February 15, 2021.

18. At around 10:35 a.m. on February 15, 2021, a new ICU doctor took over and noted, "on exam patient exam concerning for CNS disorder, with right gaze deviation, flaccid UE, 4+ clonus bilateral LE's." At that point, they tried to wean Sarah from the sedation, but she did not show any improvement.

19. Neurology was finally consulted, and an MRI of her brain taken around noon showed a bilateral pontine infarct.

20. At 3:50 p.m. on February 15, 2021, a CT Angio of the head showed "complete occlusion of the basilar artery."

21. The neurologist noted that "unfortunately, she is out of the 24 hours window for any standard of care treatment. She will be transferred emergently to the NICU at the U of U for

further care including potential thrombectomy and posterior decompression."

22. Sarah was transferred to the University of Utah neurology unit where she remained until being transported by her family back to California in December 2021.

23. Sarah is now a non-verbal quadriplegic who can only communicate with a brain/computer interface.

24. Ms. Ranjna Mahay, Sarah's mother, has filed a petition to be appointed as legal guardian of Sarah Kabir, and her estate, and she anticipates having this process complete by the time the Complaint is served.

**FIRST CLAIM FOR RELIEF**
(Negligence – Health Care Malpractice)
*DEFENDANTS, DR. TYLER J. WILLIAMS, M.D. and EMERGENCY PHYSICIANS INTEGRATED CARE, LLC ("EPIC") and DOES I-X*

19. Plaintiffs reallege and incorporate the preceding paragraphs as if set forth fully herein.

20. Defendants, individually, collectively, and through the acts and omissions of their agents and employees accepted Sarah as a patient and thereby assumed various duties of care.

21. At all relevant times, Defendants held themselves out as being able to provide full care and treatment for patients requiring medical care of the type that Sarah required, including, but not limited to, proper diagnostic testing; recognizing Sarah's symptoms; and proper medical interventions.

22. The degree of care and treatment provided by Defendants to Sarah fell below the acceptable standards of care for the types of medical care and treatment required by Sarah and manifested a reckless disregard for the health and safety of Sarah.

23. Specifically, Defendants breached the applicable standards of care in multiple

ways, including, but not limited to:

   a. Failing to properly evaluate Sarah's condition;

   b. Failing to recognize Sarah's symptoms;

   c. Failing to properly evaluate Sarah for a stroke or other injury to her brain;

   d. Failing to timely obtain a neurology consult;

   e. Failing to follow proper policies, procedures, protocols, and guidelines related to Sarah's care;

   f. Failing to recognize the seriousness of Sarah's condition;

   g. Failing to ensure that proper treatment and care was given to Sarah;

   h. Any other breach of care not listed herein that may later be discovered.

24. As a direct, proximate, and legal result of the above-described deviations from the standard of care, and such others as discovery will reveal, Defendants' acts and omissions caused injury to Plaintiff, including, but not limited to: Past and future medical expenses, past and future lost wages, reduced quality of life, significant and lengthy pain and suffering, loss of mobility, emotional distress, loss of enjoyment, loss of consortium and other special and general damages in an amount to be determined at trial.

25. Defendants' conduct and treatment of Sarah demonstrates a knowing and reckless indifference toward, and a disregard of, the rights of others so as to justify the imposition of punitive damages.

26. Defendants, EMERGENCY PHYSICIANS INTEGRATED CARE, LLC ("EPIC") and DOES I-X are liable for the acts and omissions of their agents, including but not limited to TYLER J. WILLIAMS, M.D., and the residents, fellows, physicians, nurses, techs, and other staff

who provided care to Sarah by virtue of the legal doctrine *Respondeat Superior.*

27. The nature and extent of Plaintiffs' injuries are severe and were a direct and proximate result of Defendants' general and medical negligence.

28. Does I-X are individuals or entities whose names are now unknown who deviated from the standard of care with respect to Plaintiff, Sarah Kabir.

### SECOND CLAIM FOR RELIEF
(Negligence – Health Care Malpractice)
*DEFENDANTS, CHRISTOPHER K. ANDERSON, M.D. and DAVIS HOSPITAL AND MEDICAL CENTER ("DAVIS HOSPITAL") and DOES I-X*

29. Plaintiffs reallege and incorporate the preceding paragraphs as if set forth fully herein.

30. Defendants, individually, collectively, and through the acts and omissions of their agents and employees accepted Sarah as a patient and thereby assumed various duties of care.

31. At all relevant times, Defendants held themselves out as being able to provide full care and treatment for patients requiring medical care of the type that Sarah required, including, but not limited to, proper diagnostic testing; recognizing Sarah's symptoms; and proper medical interventions.

32. The degree of care and treatment provided by Defendants to Sarah fell below the acceptable standards of care for the types of medical care and treatment required by Sarah and manifested a reckless disregard for the health and safety of Sarah.

33. Specifically, Defendants breached the applicable standards of care in multiple ways, including, but not limited to:

   a. Failing to properly evaluate Sarah's condition;
   b. Failing to recognize Sarah's symptoms;

    c. Failing to properly evaluate Sarah for a stroke or other injury to her brain;

    d. Failing to timely obtain a neurology consult;

    e. Failing to follow proper policies, procedures, protocols, and guidelines related to Sarah's care;

    f. Failing to recognize the seriousness of Sarah's condition;

    g. Failing to ensure that proper treatment and care was given to Sarah;

    h. Any other breach of care not listed herein that may later be discovered.

34. As a direct, proximate, and legal result of the above-described deviations from the standard of care, and such others as discovery will reveal, Defendants' acts and omissions caused injury to Plaintiff, including, but not limited to: Past and future medical expenses, past and future lost wages, reduced quality of life, significant and lengthy pain and suffering, loss of mobility, emotional distress, loss of enjoyment, loss of consortium and other special and general damages in an amount to be determined at trial.

35. Defendants' conduct and treatment of Sarah demonstrates a knowing and reckless indifference toward, and a disregard of, the rights of others so as to justify the imposition of punitive damages.

36. Defendant, DAVIS HOSPITAL AND MEDICAL CENTER ("DAVIS HOSPITAL") and DOES I-X are liable for the acts and omissions of their agents, including but not limited to CHRISTOPHER K. ANDERSON, M.D. and the residents, fellows, physicians, nurses, techs, and other staff who provided care to Sarah by virtue of the legal doctrine *Respondeat Superior*.

37. Does I-X are individuals or entities whose names are now unknown who deviated

from the standard of care with respect to Plaintiff, Sarah Kabir.

### THIRD CLAIM FOR RELIEF
(Negligence – Health Care Malpractice)
*DEFENDANTS, ALLEN A. NAWROCKI, M.D. and DIRECT RADIOLOGY, PLLC ("DIRECT RADIOLOGY") and DOES I-X*

38.  Plaintiffs reallege and incorporate the preceding paragraphs as if set forth fully herein.

39.  Defendants, individually, collectively, and through the acts and omissions of their agents and employees accepted Sarah as a patient and thereby assumed various duties of care.

40.  At all relevant times, Defendants held themselves out as being able to provide full care and treatment for patients requiring medical care of the type that Sarah required, including, but not limited to, proper diagnostic testing; recognizing Sarah's symptoms; and proper medical interventions.

41.  The degree of care and treatment provided by Defendants to Sarah fell below the acceptable standards of care for the types of medical care and treatment required to meet Sarah's needs.

42.  Specifically, Defendants breached the applicable standards of care in multiple ways, including, but not limited to:

   a. Failing to properly read the CT scan of Sarah's head;

   b. Failing to recognize that the CT scan taken at 4:02 am showed an occlusion.

   c. Failing to recognize Sarah's symptoms;

   d. Failing to properly evaluate Sarah for a stroke;

   e. Failing to follow proper policies, procedures, protocols, and guidelines related to Sarah's care;

  f. Any other breach of care not listed herein that may later be discovered.

 43. As a direct, proximate, and legal result of the above-described deviations from the standard of care, and such others as discovery will reveal, Defendants' acts and omissions caused injury to Plaintiff, including, but not limited to: Past and future medical expenses, past and future lost wages, reduced quality of life, significant and lengthy pain and suffering, loss of mobility, emotional distress, loss of enjoyment, loss of consortium and other special and general damages in an amount to be determined at trial.

 44. Defendant, DIRECT RADIOLOGY, PLLC ("DIRECT RADIOLOGY") and DOES I-X are liable for the acts and omissions of their agents, including but not limited to ALLEN A. NAWROCKI, M.D. and the residents, fellows, physicians, nurses, techs, and other staff who provided care to Sarah by virtue of the legal doctrine *Respondeat Superior*.

 45. Does I-X are individuals or entities whose names are now unknown who deviated from the standard of care with respect to Plaintiff, Sarah Kabir.

<b><u>PRAYER FOR RELIEF</u></b>

**WHEREFORE**, Plaintiffs pray for a judgment against Defendants in an amount to be determined by the trier of fact for the following damages:

 a. For special damages in an amount to be determined at trial;

 b. For general damages in an amount to be determined at trial;

 c. For punitive damages in an amount to be determined at trial as to Christopher K. Anderson, M.D., Davis Hospital, Tyler J. Williams, M.D., and EPIC defendants;

 d. For pre- and post-judgment interest on all special damages pursuant to Utah law;

 e. For costs and attorney fees to the extent allowed by law; and

  f.  For such other relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED this the 2nd day of February, 2023.

                **G. ERIC NIELSON & ASSOCIATES**

                */S/ Todd Wahlquist*
                G. ERIC NIELSON
                TODD WAHLQUIST
                *Attorneys for Plaintiff*